**Lillie YOUNG, Plaintiff,**

v.

**SKAGGS DRUG CENTERS, INC., a corporation, Defendant.**

**No. LR–C–78–187.**

United States District Court, E. D. Arkansas, W. D.

April 11, 1980.

John W. Walker, Little Rock, Ark., for plaintiff.

M. Samuel Jones, III, Wright, Lindsey & Jennings, Little Rock, Ark., for defendant.

## MEMORANDUM OPINION

HENRY WOODS, District Judge.

The complaint alleges that while plaintiff was a customer in defendant's store, and after purchasing several items there, she was apprehended by defendant's agent and accused of stealing a bottle of insulin. Plaintiff's purse was searched and although a bottle of insulin was discovered, a receipt for its purchase was also found. Plaintiff alleges that the accusation and search were made in the presence of many people, including plaintiff's daughter, and that the incident caused her humiliation, embarrassment mental anguish and an increase in her blood pressure. She states that the actions of defendant were undertaken because of plaintiff's color. She sues for both compensatory and punitive damages under 28 U.S.C. § 1343(4) and 42 U.S.C. § 1981. The cause is presented on defendant's motion to dismiss for (1) lack of subject matter jurisdiction and (2) failure to state a claim upon which relief can be granted, together with plaintiff's response thereto.

The first U.S.Code section upon which plaintiff relies provides that U.S. District Courts shall have original jurisdiction of any civil action to secure relief under any Act of Congress providing for the protection of civil rights. The civil rights violated by defendant's actions are alleged to be those protected by 42 U.S.C. § 1981, which reads as follows: "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other."

Rule 12(b)(1) of the FRCP authorizes motions to dismiss for lack of subject matter jurisdiction. Plaintiff relies on the following sentence from Rule 12(b): "If, on a motion asserting the defense numbered (6) to dismiss for failure of the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given a

reasonable opportunity to present all material made pertinent to such a motion by Rule 56." Plaintiff then argues that the allegations of the Complaint must at this point be taken as true in the absence of evidence in contravention and inferentially that defendant's relief must necessarily be asserted by a motion for summary judgment and not by a motion to dismiss.

The question as to subject matter jurisdiction is distinct from the issue whether the plaintiff has stated a federal cause of action; the court usually must assume jurisdiction before it can decide whether a cause of action has been stated. *Bell v. Hood*, 327 U.S. 678, 682, 66 S.Ct. 773, 776, 90 L.Ed. 939 (1946). Jurisdiction however under 28 U.S.C. § 1343(4) appears to represent an exception to the *Bell v. Hood* type of analysis. *Haldorson v. Blair*, 449 F.Supp. 1025 (D.Minn.1978). The Supreme Court of the United States has pointed out that "if this were a § 1983 action, brought under the special jurisdictional provision of 28 U.S.C. § 1343, it would be appropriate for this Court to inquire, for jurisdictional purposes, whether a statutory action had in fact been alleged." *Mt. Healthy School District v. Doyle*, 429 U.S. 274, 278, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977). The fact that the action is brought under § 1981 provides no exception to the jurisdictional rule as stated above by the Supreme Court. Section 1343 is the jurisdictional mirror of the substantive cause of action created by 42 U.S.C. § 1981. *Haldorson v. Blair, supra.* In order to determine whether a cause of action is stated under § 1343, this court must determine whether a cause of action has been stated under § 1981.

We now proceed to such a determination. Assuming that plaintiff's factual allegations are true, has she stated a substantive cause of action under 42 U.S.C. § 1981? We hold that she has not stated a viable federal cause of action. The controlling case is *Paul v. Davis*, 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). The facts in that case are strikingly similar to those in the case at bar. Plaintiff's name and photograph appeared on a flyer which was captioned "Active Shoplifters" and which was distributed among merchants by the defendant Chief of Police. Plaintiff had been arrested on a shoplifting charge, but it was later dismissed and he brought the suit under § 1983. His suit was based on two premises: (1) The Due Process Clause of the Fourteenth Amendment and § 1983 make actionable many wrongs inflicted by government employees which had heretofore been thought to give rise only to state-law tort claims. (2) The infliction by state officials of a "stigma" to one's reputation is somehow different in kind from the same official's infliction of harm or injury to other interests protected by state law. The same basic premises must bottom plaintiff's claim in the case at bar, even though she asserts an infringement of her constitutional rights by a private person. What the Supreme Court said in *Paul v. Davis, supra*, in holding that a federal claim could not be asserted under the first premise is peculiarly apropos here. "But such a reading would make of the Fourteenth Amendment a font of tort law to be superimposed upon whatever systems may already be administered by the States. We have [already] noted the 'constitutional shoals' that confront any attempt to derive from congressional civil rights statutes a body of general federal tort law, *Griffin v. Breckenridge*, 403 U.S. 88, 101–102, 91 S.Ct. 1790, 1797–98, 29 L.Ed.2d 338, 347–48 (1971)."

As a matter of fact, Arkansas tort law is very favorable to one in plaintiff's position. The defamation statutes, Ark.Stat.Ann. §§ 41–3455—41–3461 (1977 Repl.Vol.) are comprehensive. As noted in Dean Prosser's classic article, "Insult and Outrage," 44 Cal. L.Rev. 40 (1956), Arkansas is in the forefront of those states permitting recovery for insult and outrage, the so-called "tort without a name." At the time this article was written, many if not most jurisdictions required physical illness or some non-mental damage as a basis of this tort. The Arkansas Supreme Court, however, has affirmed a recovery for a plaintiff where defendants stood on the road outside his home, accused him of stealing hogs and ordered him to leave the county on pain of being lynched.

There was no allegation of any pain beyond mental anguish and humiliation. *Wilson v. Wilkins*, 181 Ark. 137, 25 S.W.2d 428 (1930), Prosser op. cit. supra, p. 53, note 77. Contrary to most courts which hold that "there is no harm in asking," Arkansas finds that invitation of an unwilling woman to illicit intercourse is an actionable tort. *Erwin v. Milligan*, 188 Ark. 658, 67 S.W.2d 592 (1934); Magruder, "Mental and Emotional Disturbance in the Law of Torts," 49 *Harv. L.Rev.* 1033, 1044. Assuming the truth of the allegations contained in the complaint as true, which we do for the purposes of this motion, the conduct of defendant's agent was insulting, outrageous, and completely unjustified. But ample remedy existed under Arkansas law.

The second premise of plaintiff's theory in *Paul v. Davis, supra* was also rejected by the Supreme Court. "The words 'liberty' and 'property' as used in the Fourteenth Amendment do not in terms single out reputation as a candidate for special protection over and above other interests that may be protected by state law." Id., 424 U.S. at 701, 96 S.Ct. 1155, 1160. The court pointed out that "his interest in reputation is simply one of a number which the State may protect against injury by virtue of its tort law, providing a forum for vindication of those interests by means of damages actions." Id. at 712, 96 S.Ct. 1155, 1165–1166.

*Paul v. Davis, supra*, has been followed by the Court of Appeals of this Circuit in two recent § 1983 cases involving defamation. "In light of the Supreme Court's recent holding in *Paul v. Davis, supra*, appellant's allegations of defamation fail to state a federal claim." *Smith v. Klecker*, 554 F.2d 848, 849 (8th Cir. 1977); *Ledwith v. Douglas*, 568 F.2d 117, 119 note 2 (8th Cir. 1978).

The allegation in plaintiff's complaint that defendant's actions were undertaken because of plaintiff's race or color give the court some problems on the availability of a motion to dismiss. This conclusory statement in paragraph IV is not borne out by the other allegations in the complaint. The operative facts are set forth in paragraph V. These allegations simply state that defendant's agent mistakenly believed the plaintiff was a shoplifter and apprehended and searched her because of their suspicions. There is no indication or allegation that she would not have been apprehended if she had been white. There is no allegation that Skaggs Drug Centers, Inc. had a policy of only detaining or only searching black persons suspected of shoplifting. Herein lies the distinction between this case and *Hall v. Pennsylvania State Police, et al.*, 570 F.2d 86 (3rd Cir. 1978). In the latter case plaintiff sued the Pennsylvania State Police and a bank because of a concerted plan whose stated specific objective was to "take photos of any black males or females coming into the bank who may look suspicious." The Court of Appeals for the Third Circuit reversed the dismissal of § 1983 claims against the State and § 1981 claims against the bank. "This is not a situation where suspects are being sought on the basis of descriptions which include race as well as other physical characteristics. No crime was under investigation nor was there any information that a robbery was planned. The police simply instituted a general photographic survey limited to one race, a practice not justifiable on the factual allegations in plaintiff's complaint." Id. at 91.

It is certainly true that § 1981 on which plaintiff relies obligates commercial enterprises to extend the same treatment to contractual customers "as is enjoyed by white citizens." *Runyon v. McCrary*, 427 U.S. 160, 96 S.Ct. 2586, 49 L.Ed.2d 415 (1976). The difference in *Hall* and the case at bar become apparent in the following quotation from the opinion of Judge Weis: "Here, plaintiff asserts that upon entering the premises to transact business, his photograph was taken for the police by bank employees pursuant to a racially based surveillance scheme. He received disparate, and because it was based on race, disparaging treatment for which the record offers no justification.

*"This was not the isolated act of an individual employee, but rather the implemen-*

*tation of a policy deliberately adopted by bank management to offer its services under different terms dependent on race."* (Emphasis added.) 570 F.2d 86, 92 (3rd Cir. 1978).

The motion to dismiss is hereby granted.